IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

AURORA A. HURLOCKER                                                    PLAINTIFF


         v.                          CIVIL NO.         2:10-CV-2009


MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                     DEFENDANT

**MEMORANDUM OPINION**

        Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) under Title II of the Social Security

Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether

there is substantial evidence in the administrative record to support the Commissioner's decision.

*See* 42 U.S.C. § 405(g).


I.      **Procedural Background:**

        Pursuant to Titles II and XVI of the Social Security Act, Aurora Hurlocker

(Plaintiff) protectively filed applications for a period of disability, disability insurance

benefits, and supplemental security income on June 14, 2007. Her applications were

denied initially and upon reconsideration. Plaintiff subsequently requested a hearing, and

a hearing was held on November 20, 2008, before an Administrative Law Judge. Plaintiff

testified at the hearing as did Floyd Massey, a vocational expert. The ALJ issued a

decision denying all benefits to Plaintiff on April 3, 2009. (T. 114, 141-142). Plaintiffs request

for review by the Appeals Council (AC) was denied on December 30, 2009. (T. 1).  On January

7, 2010, Plaintiff filed a complaint nunc pro tunc with this court for the purpose of obtaining

judicial review of the final decision of the Commissioner pursuant to 42 U,S.C. §§405(g),

1383©.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find

it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial

evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff

must show that his disability, not simply his impairment, has lasted for at least twelve

consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation

process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).

Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and

work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683

F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

III.    **Applicable Facts**

A.  **ALJ's Findings:**

The ALJ found that the Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926). (T. 68). The ALJ

found that Plaintiff had severe impairments related to her back and neck, as well as an anxiety

disorder and a personality disorder, but she did not have an impairment or combination of

impairments that met or equaled any listing (Id.). The ALJ found that Plaintiff had moderate

restriction of activities of daily living; moderate limitations in maintaining social functioning;

and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 69). There were

no episodes of decompensation (Tr. 69). See 20 C.F.R. §§ 404.1520a and 416.920a.

The ALJ found that the claimant had the RFC to lift and carry 20 pounds occasionally and

10 pounds frequently and that she could sit for 6 hours during and eight-hour workday and can

stand and walk for about 6 hours during an eight-hour workday and that she could perform

unskilled work. (T. 70).

### B. Medical Evidence

On January 17, 2006 the Plaintiff presented to Sparks for the delivery of her twin babies.

(T. 186) She was in no acute distress other than the usual discomforts of early labor. (T. 187).

No cyanosis or clubbing was noted but there was a trace pretibial edema.  Her deep tendon

reflexed were 2+/4. (T. 188).  A primary low transverse cesarean section and intraoperative tubal

ligation was performed. (T. 190-193).

On May 20, 2007 the Plaintiff presented to Sparks Emergency Room for left side of body

"just doesn't feel right" for the last two weeks. (T. 195).  The Plaintiff claimed that she slipped

and fell and landed on her back.  She could not describe the severity of her pain and did not

indicate any stress/anxiety/depression/sleeping problems or hallucination. The Doctor prescribed

Nambumetone (T. 196) [1]).

On June 14, 2007 the Plaintiff filed for disability contending that she was disabled from

---

[1]NABUMETONE is a non-steroidal anti-inflammatory drug (NSAID). It is used to reduce
swelling and to treat pain.

November 1, 2006. (T. 114). At that time she claimed that she was self employed doing odd

jobs. (T. 116). The Plaintiff stated that she was unable to work because of "back, shoulder, leg

problem". (T. 141).

On September 4, 2007 the Plaintiff was seen by Dr. Westbrook for a consultative

examination.. At the time the Plaintiff stated that she had low back pain for the "past 20 years"

but was never hospitalized. She claimed that the pain radiated to both hips down to both feet,

that she had neck pain and anxiety(T. 197) and shoulder pain. (T. 199). Dr. Westbrook found her

flexion and extension to be within normal limits and that the range of motion of her extremities

was all within normal limits. (T. 200). Her neurological reflexes and limb function were all

within normal limits. (T. 201).

On September 11, 2007 Dr. Takach found that the Plaintiff had no residual severe

physical impairment or dysfunction. (T. 204).

On December 15, 2008 the Plaintiff was seen by Dr. Ted Honghiran, an orthopedic

medical doctor. His examination revealed that the lumbar spin showed a good range of motion

and that the Plaintiff could flex to 90 degrees with no severe pain. She had side bending to 25

degrees on both sides. The straight leg raise on both legs caused no sciatic pain and she had

normal knee and ankle reflex on both sides, with normal sensation in her legs and feet. (T. 226)

She did have tenderness along the posterior aspect of the cervical spine but she had no acute

muscle spasms and had normal reflex and sensation in both arms. She also had good strength of

her arms on both sides. The x-rays showed only minimal degenerative disc disease with her

alignment being good and no evidence of arthritis. Dr. Honghiran impression was that the

Plaintiff had "a history of having chronic neck and back pain, most likely from chronic cervical

lumbosacral strain in nature" but there was "no signs of a nerve deficit and there is no evidence

of muscle atrophy." (T. 227).

On December 16, 2008 the Plaintiff was seen by Dr. Kathleen Kralik, Ph. D. for a

psychological evaluation.  (T. 218).   She was diagnosed with Pain Disorder Associated with

Psychological factors  and a General Medical condition, Anxiety Disorder, NOS, Dysthymia,

Personalty Disorder, NOS and a GAF of 45-55[2]. (T. 222).

## IV.   Discussion:

The issue is whether the ALJ correctly determined that Plaintiff failed to meet his burden

of proving an impairment or combination of impairments which met or equaled the criteria of an

Appendix 1 Listing (Tr. 68-69, Finding No. 4).

**Failure to Meet Listing:**

In order to be presumptively disabled under the Listings, a claimant "must present

medical findings equal in severity to all the criteria for the one most similar listed impairment."

*Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in

original) (citing 20 C.F.R. § 416.926(a) (1989).

The record is woefully short of any substantive treatment provided to the Plaintiff. The

Plaintiff does not assert that the ALJ committed error is assessing her physical impairments but

only that the ALJ's findings did not encompass the full range of Plaintiff's mental disorders. (ECF

No. 9, p. 7).  Specifically the ALJ found that the Plaintiff's "mental impairments, considered

singly and in combination, do not meet or medially equal the criterial of listings 12.06 and

---

[2]A GAF of 41-50 can indicate serious impairment in social or occupational functioning
while a GAF of 51-60 can indicate moderate impairment in social or occupational functioning.

12.08." (T. 68).

Listing 12.06 is the listing for Anxiety Related Disorders while 12.08 is the listing for

Personalty Disorders.  Both listings provide in paragraph B as follows:

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Where we use "marked" as a standard for measuring the degree of limitation, it means

more than moderate but less than extreme. A marked limitation may arise when several activities

or functions are impaired, or even when only one is impaired, as long as the degree of limitation

is such as to interfere seriously with your ability to function independently, appropriately,

effectively, and on a sustained basis. See §§404.1520a and 416.920a.

The Plaintiff was seen by Kathleen M. Kralik, Ph.D. on December 16, 2008 who

provided a Mental Diagnostic Evaluation. (T. 218-224).  As a result of that evaluation Dr. Kralik

provided a preliminary diagnosis as follows:

Axis I: 307.89 Pain Disorder Associated with both Psychological Factors and a General

Medical Condition; 300.0 Anxiety disorder NOS (social anxiety, panic symptoms, agoraphobic

issues, generalized anxiety and avoidance; rule out trauma sequelae from past abusive

relationships); 300.4 Dysthymia; chronic (the depressive, pain, and anxious symptoms likely

exacerbated by current adjustment issues/psychosocial problems) and

Axis II: 301.9 Personality Disorder NOS (with dependent, codependent and evident

features; rule out histrionic and passive-aggressive features as well).

The ALJ failed to account for the Plaintiff's Pain Disorder (Somatoform) and Dysthymia (Mood Disorder) in his opinion. Dysthymia would be found in listing 12.04 and Plaintiff's Pain Disorder would be found in listing 12.07. Both 12.04 and 12.07 would have the same "B" criteria listed in the 12.06 and 12.08 listing where the ALJ found that the Plaintiff did not have marked impairment in two of the four categories. The court notes however that the ALJ did reference the requirements for a 12.04 listing when he stated that the Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration". (T. 69).

Dr. Kralik found that the Plaintiff's "capacity to carry out activities of daily living and daily adaptive function is estimated to be intermittently and at time significantly impaired". (T. 222). The court interprets the reference to significantly impaired to be the same as marked. That her capacity to communicate and interact in a socially adequate manner was somewhat impaired (T. 223), her ability to communicate was generally adequate (Id.), her capacity to copy with the typical mental/cognitive demands of basic work like tasks was moderately impaired, her ability to sustain concentration was intermittently impaired and her ability to sustain persistence and complete work like tasks within an acceptable time frame was likely impaired. (Id.).

The ALJ found that Plaintiff was only moderately impaired and made reference to a Function Report of July 7, 2007. (T. 150-156) The Plaintiff stated at that time that she would dress the children and cook for them. (T. 150). She acknowledged that she was able to do cleaning and laundry (T. 152), that she went outside one to two times per day (T. 153) and she could drive a car, go shopping and handle money (Id..).

In the Eighth Circuit, while it is preferable that an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion. *See Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir.2003). Therefore, as long as the record supports the "overall conclusion" that Plaintiff does not meet the requirements of any of the listings, the ALJ did not err by failing to provide his rationale.  In the present case the record supports the ALJ determination that the Plaintiff did not meet any of the listed impairments.

**RFC:**

Of particular concern to the court, however, is the RFC assigned by the ALJ.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). However, the ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made).  It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC.  If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record.  *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

**A.  Physical Impairments:**

In this case the record is devoid of any medical records furnished by the Plaintiff that support her contention that she is physically disabled. On June 14, 2007 the Plaintiff filed for disability contending that she was disabled from November 1, 2006. (T. 114).  At that time she claimed that she was self employed doing odd jobs. (T. 116).  The Plaintiff stated that she was

unable to work because of "back, shoulder, leg problem". (T. 141).  The medical records show that the plaintiff presented to the Sparks Regional Medical Center Emergency Room on May 20, 2007 complaining that she had fallen and had left side body pain (T. 195). The Plaintiff indicated that she could perform activities of daily living and she was discharged with a prescription for Nambumetone which is an anti inflammatory drug. (Id.).  The records indicate that she had no numbness, weakness, tingling or head pain. (T. 196).  She was discharged with no restrictions. Three weeks later the Plaintiff filed her disability claim (T. 114).  The ALJ did supplement the record and ordered a consultive examination by Dr. Westbrook on September 4, 2007 (T. 197-201), Dr. Takach on September 11, 2007 (T. 204) and by Dr. Ted Honghiran, an orthopedic medical doctor on December 15, 2008 (T. 226-228).

The end result of the medical examination is that the Plaintiff's flexion and extension were within normal limits (T. 200, 228), her lumbar spin showed good range of motion (T. 226) and her x-rays showed only "minimal degenerative disc disease with her alignment being good and no evidence of arthritis" (T. 227).  The end opinion was that she had "no residual severe physical impairment or dysfunction (T. 204) but no RFC computation was made.

Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

It is clear that the ALJ fully and fairly developed the record concerning the Plaintiff's alleged physical disability but the same cannot be said concerning the Plaintiff's mental condition.

### B. Mental Impairments:

The court notes that the Plaintiff did not allege a mental impairment when she filed for disability.  The fact that the plaintiff did not allege mental impairments as a basis for her disability in her application for disability benefits is significant, even if the evidence of mental impairments was later developed, (See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001)) but it is not conclusive.

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. (Id.)  Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001).  Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce their signs and symptoms. (Id.)  Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3. Worse yet, efforts to combat mental illness present their own unique difficulties. See Pate-Fires, 564 F.3d at 945. Individuals with mental illness often refuse to take their psychiatric medication-a symptom of the illness itself, rather than an example of willful noncompliance.

It does not appear that the issue of mental impairment came to light until the Plaintiff was seen by Dr. Westbrook for a consultive examination on September 4, 2007.   The issue of "anxiety" appears in Dr. Westbook's history of the Plaintiff (T. 197) and he also records in his

report "Anxiety–hospitalized Sparks 1992" (T. 199).

The ALJ, in attempting to develop the record had the Plaintiff seen by Dr. Kathleen M.

Kralik, Ph. D. on December 16, 2008 who prepared a "Mental Diagnosis Evaluation" (T. 218-

224). The court is unsure as to whether this is intended as a Medical Source Statement. [3] The

court has previously referred to the substance of this evaluation.  Dr. Kralik noted that her

diagnosis should be "considered preliminary/provisional" and that for a "more definitive

diagnosis, a more formalized, comprehensive psychological assessment would be required" (T.

222).  Dr. Kralik also stated that more "clarification regarding her pattern of changing jobs, her

persistence in employment endeavors over time, etc. may help clarify how her current status and

functionality compares with that at other times in her life when she nonetheless worked" (T.

223).  It is clear that Dr. Kralik did not provide a formal RFC assessment and by her own

statement her findings were "provisional".  If a treating physician has not issued an opinion

which can be adequately related to the disability standard, the ALJ is obligated to address a

precise inquiry to the physician so as to clarify the record.  *See Vaughn v. Heckler*, 741 F.2d 177,

179 (8th Cir. 1984).

In the present case, the record does not contain a RFC assessment by Dr. Kralik and the

ALJ erred in not obtaining a Mental RFC assessment. *See Nevland v. Apfel,* 204 F.3d 853, 858

(8th Cir.2000) (ALJ may not draw upon his own inferences from medical reports); *See*

---

[3]Medical source statements are medical opinions submitted by acceptable medical sources [Note 3], including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work- related activities on a sustained basis. Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports.  SSR 96-5, p. 34473.

*Hildebrand v. Barnhart,* 302 F.3d 836, 838 (8th Cir.2002) (court may remand for taking of further evidence where ALJ fails to develop record fully).

On remand, the ALJ is directed to address interrogatories to Dr. Kralik asking her to review plaintiff's medical records; to complete a RFC assessment regarding plaintiff's capabilities during the time period in question, and to give the objective basis for her r opinions so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).  With this evidence, the ALJ should then re-evaluate plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

## V.     Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this 22nd  day of February 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE